[Civ. No. 7744. First Appellate District, Division Two.—March 3, 1931.]

PETER BARNES, Appellant, v. R. V. COCKE, Respondent.

M. W. Conkling for Appellant.

W. A. Alderson for Respondent.

SPENCE, J.—The issues presented by the first cause of action of defendant's amended cross-complaint and plaintiff's answer thereto were tried before a jury pursuant to stipulation of the parties. By his cross-complaint defendant sought to recover from plaintiff damages for breach of a certain "Land Lease and Agreement" hereinafter set forth. The trial resulted in a judgment in favor of defendant and cross-complainant for approximately $36,000, from which judgment plaintiff and cross-defendant appeals.

The instrument above referred to was executed by the parties on August 20, 1921, and reads as follows:

"Land Lease and Agreement

"August 20, 1921.

"This agreement made this 20th day of August, 1921, between Peter Barnes, party of the first part, and R. V. Cocke, party of the second part, both of Los Angeles, State

of California, Witnesseth: that in consideration of one-third (⅓) of the crop completely harvested and marketed the party of the first part agrees to rent to the party of the second part for five years (5) commencing from date and the party of the second part agrees to rent the following described land: the west forty (40) acres more or less of his ranch near Downey known as the Barnes ranch for consideration of two-thirds (⅔) of the crop.

"The party of the second part agrees to plant the entire tract in trees before March 1st, 1922, and put the land in good shape before planting the trees, keep the trees in good shape and growing for five (5) years.

"The land can be sold at any time during the life of this contract upon the mutual agreement of both parties, the price not to be less than eight hundred dollars ($800.) per acre. If a sale of the land is made during the life of this contract the party of the first part is to receive five hundred dollars (500) per acre and additional to this amount is to receive the full amount of the cost of the pipe and the trees with seven (7) per cent interest to start from date of purchase of pipe and trees. The remainder of the profits to be divided equally between the parties.

"The party of the second part shall not sub-lease, let, or underlease the land described within this contract, without the written consent of the party of the first part, and at the termination of five (5) years if the land is not sold the parties will have the land appraised by disinterested parties. The party of the first part will select his own appraiser and the party of the second part will select his own appraiser. These two appraisers will select a third appraiser jointly.

"If the land herein described is not sold during the life of this contract a settlement may be made between the parties by the party of the second part taking his profits in land adjoining his ranch now owned by him. This adjoining land to be taken by the party of the second part as his profits shall be appraised separate from the remainder of the land.

"If the party of the second part fails to comply with all the provisions in the above contract it becomes void and the party of the first part can enter into and take possession

322

of the land described within this contract. This contract binds their heirs and assigns.

"PETER BARNES,
"Party of the First Part.
"R. V. COCKE,
"Party of the Second Part.
"Witness: MARGARET J. COCKE."

The premises referred to adjoined other land belonging to plaintiff and also adjoined land belonging to defendant. Under the foregoing agreement, defendant entered into possession. The land had not been cultivated for some time and defendant proceeded "to put the land in good shape before planting the trees", as provided. Plaintiff furnished the trees which were planted by defendant. Crops were grown upon the land each year and from time to time the parties adjusted their accounts under the provisions of the agreement relating to crops. Many difficulties were encountered. The testimony showed that the trees furnished by plaintiff were not in good condition when delivered to defendant for planting; shortage of water made it impossible to obtain sufficient water at the time required; various pests, such as Johnson grass, nematodes and crown gall were present. Defendant, nevertheless, continued caring for the orchard, replanting trees where necessary and growing crops as directed by plaintiff. The parties were frequently together and discussed the existing conditions which were of mutual concern to both of them. Defendant appears to have worked the land industriously and no objection was voiced to his performance of the terms of the agreement until shortly before the expiration of the lease. Some time prior thereto plaintiff had advised defendant that he had sold the land for $2,000 per acre and that defendant's share in the profits would be $45,000. This sale was never consummated. On February 5, 1926, six months prior to the expiration of the five years, plaintiff wrote to defendant advising him that he declared "said agreement null and void and terminated on account of your failure to keep and perform the terms thereof" specifying certain alleged failures on the part of defendant to perform under the agreement. Thereafter on July 23, 1926, and prior to the expiration of the five years, plaintiff filed his complaint for cancellation and rescission of the agreement. Plaintiff refused to appoint an appraiser or

otherwise recognize any further rights of defendant under the agreement. After the expiration of the five years, defendant filed his cross-complaint alleging performance on his part, plaintiff's failure to perform and sought damages for the alleged breach of the agreement on the part of plaintiff, alleging that the value of the land at the termination of the lease was $3,000 per acre. By his answer to the cross-complaint plaintiff denied performance on the part of defendant, denied any breach on the part of plaintiff and denied that the land was worth in excess of $1,000 per acre. There were other allegations in the cross-complaint and answer thereto, some of which allegations will be hereinafter referred to.

It may be observed that the agreement above set forth is incomplete and is obviously vague and indefinite in many respects. A casual reading of its terms can lead to no other conclusion. In the cross-complaint respondent alleged that the written agreement was incomplete and respondent set forth what he claimed to be the entire agreement of the parties including the agreement by appellant to furnish the trees, pipe-line and water for irrigating all crops and trees on the premises. It was further alleged that the tract of "40 acres more or less" was in fact a tract of 50 acres. Some of the allegations of the cross-complaint were admitted and others denied. Evidence was admitted by the court in support of these allegations, and much of this evidence was admitted without objection.

Appellant contends first, that the verdict was contrary to the uncontradicted evidence; second, that the court erred in the giving and refusing of instructions to the jury, and third, that the court erred in its rulings on evidence.

■ Under the first contention appellant argues that as the evidence failed to show a sale of the land during the five years covered by the agreement, respondent was not entitled to recover any profit from the increased value of the land at the end of the five years. We cannot agree with appellant in this construction of the agreement. It clearly appears that the parties intended that respondent should share not only in the crops raised, but also in the increased value of the land. If sold during the life of the agreement, it was provided that the parties should share the profits over a certain amount; if not sold during the life of the

agreement, it was provided that a settlement be made by respondent taking his profits in land adjoining his ranch. For this purpose it was agreed that the parties should appoint appraisers to appraise the land involved in the agreement and also to separately appraise the portion of the land to be taken by respondent as his share of the profits. ■ Appellant further urges that the phrase "keep the trees in good shape and growing for five (5) years" should be so construed as to make respondent an insurer and guarantor that the trees would all be "growing and in fine shape five years after planting". The court instructed the jury that under the agreement respondent was not an insurer or guarantor that the trees would grow for five years and that the agreement only placed upon respondent the "obligation to cultivate and care for said trees in a reasonable and ordinary husbandry manner and to do so in the same manner as would be expected to be done under the same conditions by a reasonable and ordinary rancher and farmer". The jury was further instructed that the agreement covered the period of five years from its date and that the obligations of respondent did not continue until five years after the planting of the trees in February, 1922. We are of the opinion that the court's instructions placed the proper construction on the agreement. The construction contended for by appellant is entirely unreasonable. It is a matter of common knowledge that not every tree planted will survive even under the most favorable conditions. In the present case appellant furnished the trees and his position is wholly untenable as the choice of the type and the quality of the trees furnished was left to appellant. ■ We are further of the opinion that the period covered by the agreement was five years from the date thereof and not five years from the planting of the trees as contended by appellant. No definite time was fixed for the planting except that it should be done "before March 1, 1922". A reading of the entire agreement shows that the five years referred to in the paragraph relating to planting and caring for the trees was the same five years covered by the lease. ■ It is further contended that respondent is not entitled to recover as it was admitted that respondent remained in possession after the termination of the lease. It is argued that this affirmatively shows a violation of the implied promise of respondent

as lessee to surrender possession at the termination of the lease and that his proof of performance therefore fails. Whatever rule may be generally applicable to the ordinary case involving the rights of the lessor and lessee, it can have no application here. It was admitted by the pleadings and on the trial that the land had increased in value. Under the rather unusual agreement between the parties, respondent was entitled to an undetermined interest in the land as his share of the profits resulting from the increased value of the land. The exact amount of this interest and the particular portion of the land to be taken by respondent could only be determined following an appraisement as provided in the agreement. Appellant failed and refused to appoint an appraiser and under these circumstances we find no merit in appellant's claim that respondent's continued possession of the premises defeated his right of recovery.

In our opinion the second and third main contentions of appellant relating to the giving and refusing of instructions and the rulings upon evidence are likewise without merit. Some of appellant's specifications of error under these headings involve the questions hereinbefore discussed. We have examined the entire charge given to the jury and are satisfied that the instructions were fully as favorable to appellant as he was entitled to have them. Neither in the instructions to the jury nor in the rulings upon evidence do we find any prejudicial error which would warrant a reversal. The record discloses that respondent spent a great amount of time and money in carrying out the terms of the agreement and that he worked the land continuously in order to produce the best result under the adverse conditions encountered. Appellant took no exception to respondent's performance until shortly before the termination of the lease. The evidence of the condition of the land and orchard at the end of the five years amply sustained the implied finding that respondent had performed and he was therefore entitled under the agreement to his share in the increased value of the land.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 2, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 30, 1931.